1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ADAN M. RAYA,                                No.  2:11-cv-02340 JAM AC P

12                   Petitioner,

13         v.                                       ORDER AND FINDINGS

14    RONALD GROUNDS,                               AND RECOMMENDATIONS

15                   Respondent.

16

17            Petitioner is a California state prisoner proceeding with appointed counsel on an

18    application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the

19    second amended petition.  ECF No. 33.[1]  The pleadings closed on September 6, 2012 with the

20    filing of petitioner's Response to the Answer.  ECF No. 40.  On May 28, 2014, having identified

21    a request for a stay in petitioner's final pleading, the undersigned directed petitioner to file a

22    properly noticed motion for a stay.  ECF No. 42.  After several false starts, a stay motion was

23    briefed and was heard on September 3, 2014.  Marylou Hillberg appeared for petitioner.  Tia M.

24    Coronado, Deputy Attorney General, appeared for respondent.  On review of the parties'

25    submissions and upon hearing the arguments of counsel, THE COURT FINDS AS FOLLOWS:

26    ////

27    _____

28    [1] This pleading was erroneously captioned and docketed as a First Amended Petition.  Petitioner
      had amended his petition once prior to the appointment of counsel.  See ECF No. 16.

1          RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

2      A. Petitioner's Trial and Conviction

3          Petitioner was tried in Shasta County Superior Court for the 2006 murder of Nora Degner.

4 The prosecution's evidence at trial established the following facts:

5          On the afternoon of August 13, 2006, petitioner, his wife's cousin, Traves Everett, and

6 petitioner's neighbor, Emiliano Alanis, went to Pick and Pull to buy auto parts.  Afterwards they

7 returned to petitioner's home in Anderson, California, with beer and fast food.  That evening

8 petitioner asked Alanis to drive him somewhere.[2]

9          Petitioner, who was wearing a T-shirt, shorts, and sandals, directed Alanis to drive up

10 Highway 273 toward Redding.  At some point, petitioner told Alanis to stop on the side of the

11 road and wait for him there.  Petitioner walked away from the truck and was gone for 20 to 30

12 minutes.  When he returned, he climbed into the truck bed, opened the window separating the bed

13 from the cab, and told Alanis to drive away.  During the drive home, petitioner removed his T-

14 shirt and threw it out of the truck as they crossed a bridge.  He then climbed into the cab of the

15 truck through its back window.  Petitioner appeared to be nervous.  When Alanis asked what

16 happened, petitioner said he had killed a woman.  Asked why, petitioner explained that "she owed

17 him money."

18          Petitioner and Alanis arrived at petitioner's home at around 10:00 p.m.  Alanis noticed

19 blood on petitioner's right hand as petitioner got out of the truck.  Everett came to the door and

20 saw that petitioner was no longer wearing a shirt.  Petitioner then turned on the garden hose and

21 sprayed water over his head and the truck bed.

22          Nora Degner lived off of Highway 273 in Redding.  At 9:55 p.m., she called 911 pleading

23 for help and reporting that a Mexican man named "Adon" attacked her with a knife and slashed

24 her throat.  During the call, Degner repeated the name "Adon" 11 times.  An audiotape of the call

25 was played for the jury.

26 ////

27

28 [2] Alanis testified under a grant of immunity.

2

1    An officer dispatched to Degner's residence found her lying near the front door in a pool
2    of her own blood.  When asked if she could say her name, Degner responded "Adan."  Asked
3    whether she could describe what had happened to her, she repeated the name "Adan."

4    Degner had been stabbed 19 times and slashed another 23 to 24 times.  Roughly 11 of the
5    stab wounds were to her back.  Three 4-inch stab wounds penetrated the lower lobe of her left
6    lung.  Two stab wounds on the right side of her back penetrated the liver.  Her neck was stabbed
7    several times and had been slashed.  She also had defensive wounds on her hands.  Degner did
8    not survive; the cause of death was "multiple sharp force injuries."  A later analysis of fingernail
9    clippings taken from Degner's body revealed a combination of DNA from both Degner and
10   petitioner.  The DNA analysis excluded Alanis as a source of the DNA.

11   There were no signs of forced entry at Degner's apartment, but an officer observed that
12   living room furniture "appeared to be knocked about like there was some type of struggle."  On a
13   table in the living room was a small piece of paper on which the word "Adon" and petitioner's
14   phone number were written.  Latent fingerprints were processed in several locations in the
15   apartment, and a bloody palm print was found on the frame of the screen door.  Analysis revealed
16   that petitioner's left thumb print was on a green cup near the kitchen sink and that the bloody
17   palm print on the screen door was petitioner's.

18   When investigating officers arrived at his home, petitioner answered the door.  Fresh
19   scratch marks were visible on his forehead and on the left side of his face.  He also had fresh
20   scratches on his right bicep, left forearm and hand, and right shoulder.  Petitioner gave the
21   officers permission to enter and search his residence.  Sandals that were wet, despite the fact it
22   had not been raining, were found on the bathroom floor.  Mud, grass, weeds, and several strands
23   of what appeared to be human hair were embedded in the soles.  The sandals tested positive for
24   blood, which was later determined to match Degner's DNA.

25   Travis Everett was at petitioner's house and directed officers to the home of the neighbor,
26   Alanis.  Given permission by Alanis to check out his truck, the officers observed standing water
27   in the ridges of the truck's bed liner.  A criminalist found blood on the passenger seat of the truck;
28   on the interior of the passenger side of the cab; on the passenger side interior door handle; on the

1    passenger side seat belt, buckle, and latch; on the passenger side floor mat; on the rear middle

2    sliding window; on the steering wheel; on the rear cab speaker; on the interior of the tailgate; on

3    the bed liner; and on the exterior of the truck bed on the driver's side.  Although not all of the

4    blood samples collected from the truck were analyzed, the blood found on the passenger seat belt

5    and sliding window matched Degner's DNA.

6         The murder weapon was never found.

7         Petitioner's blood was drawn approximately eight hours after the homicide, and was found

8    to have a blood alcohol level of zero.  The blood sample showed that petitioner had a small

9    nontherapeutic amount of valium in his system, but no other drugs were detected.

10        The defense presented the testimony of two doctors who had treated petitioner for back

11   pain since his 2001 back surgery, when a steel rod was placed between his vertebrae.  Dr. Pervez

12   Iranpur testified that two days before the homicide, petitioner had received a spinal injection of

13   anti-inflammatory and pain medication.  Dr. Jon Malan testified that petitioner's back pain was

14   being treated with an unspecified "medication regimen."  Dr. Malan had imposed restrictions on

15   petitioner's movements, especially bending and twisting, which could cause increased pain and

16   difficulty with functioning of the legs.

17        In closing argument, the defense suggested that petitioner was physically incapable of

18   attacking Ms. Degner, who was taller and heavier than petitioner.  Counsel also argued that

19   premeditation and deliberation had not been proved beyond a reasonable doubt, and that the

20   savagery of the attack could only be explained by some sudden and heated personal confrontation

21   that would support a verdict of no more than manslaughter.  Counsel attacked Alanis's credibility

22   and insinuated that Alanis may have been involved in the homicide.

23        The jury found petitioner guilty of first degree murder on October 17, 2007.  On

24   November 20, 2007, petitioner was sentenced to twenty-five years to life in prison.

25   B.  Post-Conviction Proceedings

26        The California Court of Appeal affirmed petitioner's conviction on July 2, 2009.  Lodged

27   Doc. 4.  The California Supreme Court denied review on October 14, 2009.  Lodged Doc. 6.

28        Petitioner filed six petitions for writ of habeas corpus in the Shasta County Superior Court

4

1   during the spring and summer of 2010 (Lodged Docs. 7, 9, 11, 13, 15 & 17), all of which were

2   denied (Lodged Docs. 8, 10, 12, 14, 16 & 18) and all of which sought discovery and/or copies of

3   transcripts. On September 13, 2010, petitioner filed a petition for writ of habeas corpus in the

4   California Court of Appeal (Lodged Doc. 19), which was denied without comment or citation on

5   September 23, 2010 (Lodged Doc. 20).

6         On October 12, 2010, petitioner filed a petition for writ of habeas corpus in the California

7   Supreme Court. Lodged Doc. 21. This petition presented claims including ineffective assistance

8   of trial counsel for failing to investigate and present an intoxication defense on the basis of

9   petitioner's alcohol and prescription drug use. The petition was denied without comment or

10  citation on June 15, 2011. Lodged Doc. 22. A second petition, presenting different claims, was

11  filed in the California Supreme Court on October 25, 2010. Lodged Doc. 23. It was denied with

12  citation to <u>In re Clark</u>, 5 Cal. 4th 750, 767-769 (1993), on June 15, 2011.[3] Lodged Doc. 24.

13        Petitioner filed an initial pro per federal habeas petition in the Northern District of

14  California on July 29, 2011. ECF No. 1. The case was subsequently transferred to this district,

15  and an amended petition was filed on October 11, 2011. ECF No. 16. Counsel was appointed on

16  December 21, 2011. ECF No. 26. A second amended petition (erroneously identified as the first

17  amended petition) was filed on May 21, 2012. ECF No. 33. This petition states a single claim of

18  ineffective assistance of counsel arising from trial counsel's failure to investigate and present a

19  defense based on the combined mental effects of alcohol and prescription medications. <u>Id.</u> at 16-

20  21. The second amended petition expressly abandons all other claims. <u>Id.</u> at 21. Respondent

21  answered on August 7, 2012. ECF No. 38. On September 6, 2012, petitioner filed a Response to

22  the Answer. ECF No. 40.

PETITIONER'S MOTION FOR A STAY

23  A. <u>Background Of Stay Request</u>

25        In his answer to the petition, respondent identified numerous factual allegations and

26  exhibits that had not been presented to the California Supreme Court in relation to petitioner's

---

28  [3] <u>Clark</u> bars, *inter alia*, the piecemeal presentation of claims.

1   ineffective assistance of counsel claim.  ECF No. 38 at 8-10.  With citation to <u>Cullen v.</u>

2   <u>Pinholster</u>, 131 S.Ct. 1388 (2011), respondent urged the court to disregard these new allegations

3   and exhibits in conducting the review required by 28 U.S.C. § 2254(d).[4]  In his response to the

4   answer, petitioner agreed that the additional evidence had not been before the state court and

5   acknowledged a "need to exhaust this evidence."  ECF No. 40 at 1.  Petitioner indicated an

6   intention to seek a stay pending further exhaustion, <u>id.</u> at 4, but filed no such motion.  Petitioner

7   argued that before he could return to state court he needed to obtain additional evidence from an

8   expert, and purported to renew a request for funding to retain such an expert.  <u>Id.</u> at 1, 3.

9   Petitioner attached a copy of an ex parte request for funding to retain a forensic psychiatrist,

10   which bore a different case number and had never come before the undersigned or the magistrate

11   judge previously assigned to this case.  <u>See</u> ECF No. 40-1.

12        Petitioner was subsequently directed to file a properly noticed and supported motion for a

13   stay, and to submit his request for expert funding pursuant to the CJA procedures for employing

14   experts for non-death penalty cases.  ECF Nos. 42, 47, 48.

15        Plaintiff's motion for a stay, ECF No. 46, was filed twenty-two months after his reply

16   indicating an intention to seek a stay.  The motion is captioned "Motion For Stay Pending Ruling

17   On Funding Request."  Petitioner argues that the court should grant a stay pursuant to <u>Rhines v.</u>

18   <u>Weber</u>, 544 U.S. 269 (2005), and grant his funding request so that he can develop additional

19   evidence in support of his claim, return to state court to exhaust the claim as supplemented, and

20   then submit that claim for resolution here.

21        B.  <u>Governing Legal Principles</u>

22            1.  <u>The Exhaustion Requirement</u>

23        Habeas petitioners are required to exhaust state remedies before seeking relief in federal

24   court.  28 U.S.C. § 2254(b).  The exhaustion doctrine ensures that state courts will have a

25   meaningful opportunity to consider allegations of constitutional violations without interference

26   from the federal judiciary.  <u>Rose v. Lundy</u>, 455 U.S. 509, 515 (1982); <u>see also</u> <u>Farmer v. Baldwin</u>,

27

28   _____
    [4] <u>Pinholster</u> holds that reasonableness review of a state court's decision under §2254(d)(1) is
    limited to the factual record that was before the state court.

497 F.3d 1050, 1053 (9th Cir. 2007) ("This so-called 'exhaustion requirement' is intended to

afford 'the state courts a meaningful opportunity to consider allegations of legal error' before a

federal habeas court may review a prisoner's claims.") (quoting Vasquez v. Hillery, 474 U.S. 254,

257 (1986)).

A petitioner satisfies the exhaustion requirement by fairly presenting to the highest state

court all federal claims before presenting them to the federal court.  See Baldwin v. Reese, 541

U.S. 27, 29 (2004); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270,

276 (1971).  A federal claim is fairly presented if the petitioner has described the operative facts

and the federal legal theory upon which his claim is based.  See Wooten v. Kirkland, 540 F.3d

1019, 1025 (9th Cir. 2008) ("Fair presentation requires that a state's highest court has 'a fair

opportunity to consider . . . . and to correct [the] asserted constitutional defect.'"); Lounsbury v.

Thompson, 374 F.3d 785, 787 (9th Cir. 2004) (same) (quoting Picard, 404 U.S. at 276)); Weaver

v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999).

Variations in legal theory or in the factual allegations urged in support of a claim do not

affect exhaustion as long as the substance of the constitutional claim remains the same.  Picard,

404 U.S. at 277; see also Robinson v. Schriro, 595 F.3d 1086, 1101-03 (9th Cir.), cert. denied,

131 S.Ct. 566 (2010).  Presentation of supplemental evidence likewise has no effect on

exhaustion unless that evidence "fundamentally alter[s] the legal claim already considered by the

state courts."  Vasquez v. Hillery, 474 U.S. 254, 260 (1986).  This may be the case where, for

example, new evidence places the case "in a significantly different and stronger evidentiary

posture that it was when the state courts considered it."  Aiken v. Spalding, 841 F.2d 881, 883

(9th Cir. 1988) (quoting Dispensa v. Lynaugh, 826 F.2d 375, 377 (5th Cir. 1987)).  The

exhaustion requirement goes to claims, however, and not to individual items of evidence.  Correll

v. Stewart, 137 F.3d 1404, 1414 n.2 (9th Cir.) (rejecting theory that claim exhaustion requires

complete presentation of evidence in state court, and stating that "'claim exhaustion' does not

equate to 'evidence exhaustion'"), cert. denied, 525 U.S. 996 (1998); see also Davis v. Silva, 511

F.3d 1005, 1009 (9th Cir. 2008) (exhaustion does not require that petitioner present every piece of

evidence to state court) (quoting Chacon v. Wood, 36 F.3d 1459, 1469 (9th Cir. 1994)).

1

2. <u>Standards For Stay and Abeyance Pending Exhaustion</u>

2          Federal courts may not adjudicate petitions for writs of habeas corpus which contain

3   unexhausted claims.  <u>Rose v. Lundy</u>, 455 U.S. at 518-19.  The petitioner must first return to state

4   court and exhaust any such claims.  <u>Id.</u>  Prior to the enactment of the AEDPA and its creation of a

5   one-year statute of limitations for federal habeas petitions, the total exhaustion rule required the

6   dismissal of so-called "mixed petitions" (those containing both exhausted and unexhausted

7   claims).  <u>See id.</u>  Post-AEDPA, the U.S. Supreme Court has established a stay and abeyance

8   procedure to permit further exhaustion without the risk that timely-filed federal claims will

9   become time-barred during the course of exhaustion.  <u>See</u> <u>Rhines v. Weber</u>, 544 U.S. 269 (2005).

10  Under <u>Rhines</u>, a federal petition containing both exhausted and unexhausted claims may be

11  stayed if and only if (1) petitioner demonstrates good cause for the failure to have first exhausted

12  the claims in state court, (2) the claim or claims at issue potentially have merit, and (3) petitioner

13  has not been dilatory in pursuing the litigation.  <u>Id.</u> at 277-78.

14         Alternatively, a petitioner may amend his petition to delete unexhausted claims; seek a

15  stay of the resulting, fully-exhausted petition while proceeding to state court to exhaust the

16  deleted claims; and later amend his federal petition to reincorporate newly-exhausted claims.

17  <u>Kelly v. Small</u>, 315 F.3d 1063, 1070-71 (9th Cir. 2003).  This procedure does not require a

18  showing of good cause, but neither does it protect petitioner's unexhausted claims from

19  untimeliness in the interim.  <u>King v. Ryan</u>, 564 F.3d 1133, 1141 (9th Cir. 2009).

20     C. <u>Discussion</u>

21         Petitioner contended at hearing that the sole claim presented in the second amended

22  petition is unexhausted, and he seeks a stay pursuant to <u>Rhines</u>, <u>supra</u>, in order to exhaust it.  A

23  petition containing no exhausted claims cannot be stayed, however; it must be dismissed.  <u>See</u>

24  <u>Rasberry v. Garcia</u>, 448 F.3d 1150, 1154 (9th Cir. 2006); <u>Jiminez v. Rice</u>, 276 F.3d 478, 481 (9th

25  Cir. 2001).  The <u>Rhines</u> stay and abeyance procedure that petitioner invokes applies to mixed

26  petitions – those containing both exhausted and unexhausted claims – but the petition here is not

27  ////

28  ////

mixed.[5]  Rather, it contains a single claim that is necessarily either exhausted or unexhausted.  If it is exhausted, there is no need for a stay.  If it is unexhausted, it cannot be stayed.

Although the answer neither concedes exhaustion nor asserts non-exhaustion as a defense, respondent took the position at hearing that petitioner's ineffective assistance of counsel claim is exhausted.  The court agrees.  The allegations and exhibits presented to the California Supreme Court specified that petitioner had consumed alcohol and valium and/or other "pain medication" on or about the date of the homicide, and that his recent treatment for a back injury and other medical conditions had included prescriptions for Vicodin, Ambien, Naproxen, Cymblata, Previcid, Skelaxin, Darvocet and Tramadol, as well as steroid injections.[6]  Petitioner alleged that counsel had rendered ineffective assistance by failing to investigate and present a mental state defense based on his impairment by substances.  Lodged Doc. 21.  The operative federal petition supplements the evidentiary record in support of this claim with an article about the effects of Zolpidem (aka Ambien) (ECF No. 33-5), information obtained from the Drugs.com website regarding the interactions of various medications (ECF No. 33-6), and documents from trial counsel's file reflecting his failure to investigate the effects of substances other than alcohol and valium (ECF No. 53-1).[7]  The federal petition is also supported by a declaration of counsel that the court construes as a proffer of evidence that trial counsel's decision not to test petitioner's blood sample for substances other than alcohol, valium and methamphetamine was based on cost.

---

[5] For this reason, the court does not address the <u>Rhines</u> factors that have been briefed by the parties.

[6] Lodged Doc. 21.  The state petition is not internally paginated.  The relevant facts are contained in the statement of Supporting Facts for Ground One, and in the following exhibits among others: Ex. A at 1-3 (report of interview with Dr. Jon Malan regarding petitioner's medications); Ex. B at 6 (report of interview with petitioner's wife, who saw him take Naproxen, Valium, Cymbalta, Skelaxin and Prevacid on the morning of the homicide).

[7] Exhibit D to the operative petition is a declaration of counsel that references attached documents.  ECF No. 33-4.  None of the referenced attachments were in fact filed with Exhibit D. Respondent was served with a paper copy of the petition which included the exhibits, and the exhibits were addressed in the answer.  <u>See</u> ECF No. 38 at 8-10.  At the hearing on the stay motion, petitioner was ordered to file a corrected and complete Exhibit D forthwith.  Petitioner has done so.  ECF No. 53.  The attachments include documents that were previously presented to the California Supreme Court, e.g. ECF No. 53-1 at 5-7 (report of interview with Dr. Jon Malan), and those that were not, e.g. ECF No. 53-1 at 5 (list of medications filled at pharmacy), <u>id.</u> at 40 (public defender expert request).

1   ECF No. 33-4 at 2; see also ECF No. 53-1 at 28 (phone message for trial counsel referencing

2   "astronomical cost" of additional testing).

3        The additional exhibits presented to this court do not change the substance of the claim,

4   which is that petitioner's Sixth Amendment right to effective representation was violated by

5   counsel's failure to investigate and present a defense based on the effects of alcohol and

6   prescription medications on petitioner's state of mind.  See Davis v. Silva, 511 F.3d at 1009

7   (where operative facts remain the same, additional evidence does not require further exhaustion).

8   The federal petition differs from the state petition only in its increased emphasis on possible drug

9   interactions and the "synergistic" effects of multiple substances.[8]  No new or different substances

10  or other sources of mental impairment are alleged, as petitioner's counsel acknowledged at the

11  hearing.  Petitioner's variation of his theory of impairment therefore does not alter the substance

12  of the claim within the meaning of Vasquez v. Hillery, 474 U.S. at 260.  See Robinson, 595 F.3d

13  at 1101-03 (variation in Eighth Amendment theory used to attack aggravating factor in capital

14  case does not render claim unexhausted).

15       Petitioner's supplemental allegations and exhibits regarding counsel's failure to seek

16  additional toxicology testing support the allegations of the state petition, but they do not alter the

17  factual predicate of the claim.  The Ninth Circuit has found far greater factual variations

18  insufficient to change the substance of a claim and require further exhaustion.  See Weaver, 197

19  F.3d at 364 (evidence of a different type of bailiff misconduct than alleged in state court does not

20  render claim unexhausted); Chacon, 36 F.3d at 1469 (evidence that misinformation about plea

21  consequences came from a different source than alleged in state court does not render involuntary

22  plea claim unexhausted).

23       Overall, the ineffective assistance claim as set forth in the operative federal petition is not

24  "so clearly distinct from the claims petitioner has already presented to the state courts that it may

25  fairly be said that the state courts had no opportunity to pass" on the claim.  Humphrey v. Cady,

26  _____

27  [8] This issue is not entirely new.  The exhibits to the state petition included a doctor's reported
    statement that petitioner had previously reported confusion as the result of "a combination of the
    drugs."  Lodged Doc. 21, Ex. A at 2.  The state court exhibits also contained information about
28  diazepam (Valium) interactions with alcohol and other substances.  Lodged Doc. 21, Ex. A at 13.

10

1    405 U.S. 504, 516 n.18 (1972).  Accordingly, while petitioner has always been free to return to

2    state court with his additional exhibits, he is not required to do so.  Because there is no non-

3    exhaustion bar to this court's consideration of the claim, a stay is not warranted.

4         Petitioner relies on Cullen v. Pinholster, 131 S.Ct. 1388 (2011), for the proposition that all

5    evidence must be presented to the state court before this court considers his petition.  Pinholster is

6    not a case about exhaustion, however, and does not involve the availability of a stay.  In

7    Pinholster, the Supreme Court held that federal courts' application of  28 U.S.C. § 2254(d), which

8    limits federal habeas relief to those claims that have been unreasonably rejected by the state

9    courts, must be conducted on the basis of the evidence that was before the state courts when they

10   ruled.  Pinholster, 131 S.Ct. at 1398.  Evidence presented for the first time in federal court may be

11   considered for other purposes, including merits review where § 2254(d) does not apply in the first

12   place (because, for example, the claim was rejected in state court without adjudication of the

13   merits) or where the claim satisfies § 2254(d)'s stringent standard.  See id. at 1412 (Breyer, J.,

14   concurring).  The scope of § 2254(d) reasonableness review is an issue distinct from the

15   requirements of § 2254(b) and the exhaustion doctrine.

16        It is undoubtedly the case that summary state court rejection of a constitutional claim is

17   more likely to be found unreasonable under § 2254(d) where the evidentiary record before the

18   state court is strongest.  For this and other reasons, it is undoubtedly in a petitioner's own interests

19   (as well as consistent with the federalism principles underlying both the exhaustion doctrine and

20   AEDPA's limitations on relief) to present all his evidence to the state court.  But none of those

21   considerations alter the standards applicable to the exhaustion question.  That question remains

22   governed by Vasquez v. Hillery, supra, and progeny.  For the reasons already explained,

23   petitioner's ineffective assistance claim is exhausted under the governing standards.

24        The court understands petitioner to argue that his claim will be placed in a significantly

25   stronger evidentiary posture, requiring further exhaustion, by the expert opinion he hopes to

26   obtain with funding that has not yet been approved.  Disregarding the tortured history of

27   ////

28   ////

1    petitioner's expert funding request,[9] the court will not recommend a stay based on speculation

2    about evidence that does not currently exist.

3         Petitioner's procedurally defective request for expert funding would be denied in any case.

4    In order to obtain habeas relief in this court after having his claim adjudicated by the state court,

5    petitioner must first pass through the gateway of § 2254(d) and then demonstrate his entitlement

6    to relief on the merits under pre-AEDPA standards.  Frantz v. Hazey, 533 F.3d 724 (9th Cir.

7    2008) (en banc).  The first inquiry is limited to the context of the state habeas record, but the

8    second is not.  Pinholster, 131 S.Ct. at 1398, 1412.  A claim that is precluded by § 2254(d) will

9    never progress to the point where further factual development is appropriate, however.

10   Accordingly, even before Pinholster, federal evidentiary hearings have been unavailable for

11   claims that fail § 2254(d) scrutiny.  See Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Earp v.

12   Ornoksi, 431 F.3d 1158, 1166-67 (9th Cir. 2005).  For the reasons explained more fully below,

13   petitioner's ineffective assistance of counsel claim was not unreasonably denied by the California

14   Supreme Court within the meaning of § 2254(d).  Accordingly, additional evidence could not be

15   considered by this court in any event, and funding for an expert evaluation is therefore

16   inappropriate.  Petitioner's plea for expert assistance thus fails to change the exhaustion analysis

17   or provide support for his stay request.[10]

18        Because the instant petition is not a "mixed petition" containing both exhausted and

19   unexhausted claims, neither Rhines nor Kelly provides a basis for a stay.  The undersigned finds

20   for the reasons explained above that petitioner's ineffective assistance claim is exhausted, and

21   petitioner has identified no authority to support a stay of proceedings for the sole purpose of

22

23   [9] See ECF Nos. 40 (Response to Answer, purporting to "renew" funding request); 42 (order
     noting, inter alia, that referenced funding request bore an incorrect case number and had never
24   been received by the court); 43 (request for funding, filed via CM/ECF); 48 (order sealing
     publicly-filed request for funding, and directing counsel to follow CJA procedures for requesting
25   expert services); 46 (motion for stay, arguing that funding request should be granted); 51
     (declaration of Kurt Heiser).  As of the date of these Findings and Recommendations, the court
26   has not received a Request for Advance Authorization for expert services in this case via the
     Federal Defender's Office.
27   [10] This case does not require the court to consider whether it may provide funding for expert
28   services in relation to a potentially meritorious unexhausted claim.

1   presenting to the state court additional evidence in support of an exhausted claim.  Accordingly,

2   the undersigned will recommend that the motion for a stay be denied.

3   PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

4       A.  <u>Standards For Relief Under the AEDPA</u>

5          28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

6   1996 ("AEDPA"), provides in relevant part as follows:

7
8   > (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

9

10  > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

11

12  > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

13

14         The statute applies whenever the state court has denied a federal claim on its merits,

15  whether or not the state court explained its reasons.  <u>Harrington v. Richter</u>, 131 S.Ct. 770, 785

16  (2011).  State court rejection of a federal claim will be presumed to have been on the merits

17  absent any indication or state-law procedural principles to the contrary.  <u>Id.</u> at 784-785 (citing

18  <u>Harris v. Reed</u>, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is

19  unclear whether a decision appearing to rest on federal grounds was decided on another basis)).

20  "The presumption may be overcome when there is reason to think some other explanation for the

21  state court's decision is more likely."  <u>Id.</u> at 785.

22         The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

23  principle or principles" previously articulated by the Supreme Court.  <u>Lockyer v. Andrade</u>, 538

24  U.S. 63, 71-72 (2003).  Clearly established federal law also includes "the legal principles and

25  standards flowing from precedent."  <u>Bradley v. Duncan</u>, 315 F.3d 1091, 1101 (9th Cir. 2002)

26  (quoting <u>Taylor v. Withrow</u>, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent

27  may constitute "clearly established Federal law," but circuit law has persuasive value regarding

28  what law is "clearly established" and what constitutes "unreasonable application" of that law.

13

1   Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044,

2   1057 (9th Cir. 2004).

3          A state court decision is "contrary to" clearly established federal law if the decision

4   "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529

5   U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state

6   court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

7   the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court

8   was incorrect in the view of the federal habeas court; the state court decision must be objectively

9   unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

10          Review under § 2254(d) is limited to the record that was before the state court. Cullen v.

11   Pinholster, 131 S.Ct. 1388, 1398 (2011). The question at this stage is whether the state court

12   reasonably applied clearly established federal law to the facts before it. Id. In other words, the

13   focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the

14   state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the

15   state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th

16   Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily,

17   without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court

18   denies a claim on the merits but without a reasoned opinion, the federal habeas court must

19   determine what arguments or theories may have supported the state court's decision, and subject

20   those arguments or theories to § 2254(d) scrutiny. Richter, 131 S.Ct. at 786.

21          B. Petitioner's Allegations and Supporting Evidence

22          The petition alleges that counsel provided ineffective assistance, in violation of

23   petitioner's Sixth Amendment right to counsel, by failing to develop and present a mental state

24   defense based on the effects of alcohol and prescription medications.[11] In addition to the beer he

25   drank during the afternoon of August 13, 2006 and the Valium that was present in his system,

26   _____

27   [11] The court here considers only the allegations and evidence that were before the California
    Supreme Court in Case No. S187261, Lodged Doc. 21. See Pinholster, 131 S.Ct. at 1398.

28   Because petitioner filed his state petition in pro per, the court construes that petition liberally and
    has carefully reviewed its exhibits for facts that support his claim.

1    petitioner had received an injection containing a sedative two days prior, and had taken Ambien

2    the night before (approximately 24 hours before the homicide.)  A defense investigator

3    interviewed petitioner's wife, and learned that petitioner had taken medications including

4    Naproxen, Valium, Cymbalta, Skelaxin and Prevacid on the morning of August 13

5    (approximately 12 hours before the homicide).  The investigator also interviewed petitioner's

6    physician, Dr. Malan, and obtained petitioner's medical records.  Accordingly, counsel was aware

7    that petitioner had been prescribed the above-noted drugs as well as Darvocet, Tramadol and

8    Vicodin, and that petitioner had previously reported experiencing confusion as the result of his

9    medications.  This evidence was not elicited when Dr. Malan testified.  Counsel had explored the

10   possibility of further toxicological testing of petitioner's blood sample, but did not obtain the

11   testing necessary to determine what substances other than Valium were present in petitioner's

12   system.  The defense presented no evidence related to the effects of medication on petitioner's

13   mental state or the formation of intent.

14       C.  The Clearly Established Federal Law

15       To establish a constitutional violation based on ineffective assistance of counsel, a petitioner

16   must show (1) that counsel's representation fell below an objective standard of reasonableness,

17   and (2) that counsel's deficient performance prejudiced the defense.  Strickland v. Washington,

18   466 U.S. 668, 692, 694 (1984).  Counsel's strategic choices are entitled to deference to the extent

19   that they are reasonable.  Id. at 689-91.  "[S]trategic choices made after thorough investigation of

20   law and facts relevant to plausible options are virtually unchallengeable; and strategic choices

21   made after less than complete investigation are reasonable precisely to the extent that reasonable

22   professional judgments support the limitations on investigation."  Id. at 690-91.  Prejudice means

23   that the error actually had an adverse effect on the defense.  There must be a reasonable

24   probability that, but for counsel's errors, the result of the proceeding would have been different.

25   Id. at 693–94.  The court need not address both prongs of the Strickland test if the petitioner's

26   showing is insufficient as to one prong.  Id. at 697.

27       The United States Supreme Court has emphasized that "[t]he standards created by

28   Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review

1  is 'doubly' so." Richter, 131 S.Ct. at 788 (internal quotations and citations omitted).  The

2  determination to be made on federal habeas review, therefore, is not whether counsel acted

3  reasonably, but "whether there is any reasonable argument that counsel satisfied Strickland's

4  deferential standard." Id.

5      D.  The State Court's Ruling

6      The California Supreme Court denied petitioner's ineffective assistance of counsel claim

7  without comment or citation.  Lodged Doc. 22.  Accordingly, this court asks whether there is any

8  reasonable basis for the state court's decision.  Richter, 131 S. Ct. at 786.

9      E.  Objective Reasonableness Under § 2254(d)

10     It was not objectively unreasonable of the California Supreme Court to summarily deny

11  petitioner's ineffective assistance of counsel claim.  The physical evidence, Alanis's testimony

12  and the victim's statements overwhelmingly established that petitioner was the perpetrator.  The

13  only real issue for trial was intent.  Petitioner was charged with first degree murder, which

14  requires proof that the killing was willful, deliberate, and premeditated.[12]  Plaintiff's various

15  medications presented an obvious and important issue for defense consideration in this regard.

16  Trial counsel did conduct a preliminary investigation by interviewing petitioner's wife and

17  doctor, obtaining his medical records, and reviewing the available toxicology evidence.

18  Counsel's presumably strategic decision not to further pursue the matter is entitled to deference,

19  and constitutes deficient performance only if it falls outside the wide range of reasonable

20  professional assistance.  Strickland, 466 U.S. at 688-9.  This assessment is made from counsel's

21  perspective at the time.  Id. at 689.

22

23  [12] The jury was instructed pursuant to CALCRIM 521 as follows: "The defendant acted willfully
    if [he] intended to kill. The defendant acted deliberately if [he] carefully weighed the
24  considerations for and against [his] choice and, knowing the consequences, decided to kill.  The
    defendant acted with premeditation if [he] decided to kill before committing the act that caused
25  death.  The length of time the person spends considering whether to kill does not alone determine
    whether the killing is deliberate and premeditated.  The amount of time required for deliberation
26  and premeditation may vary from person to person and according to the circumstances.  A
    decision to kill made rashly, impulsively or without careful consideration is not deliberate or
27  premeditated.  On the other hand, a cold, calculated decision to kill can be reached quickly.  The
    test is the extent of the reflection, not the length of time." CT 289.
28

In light of the context in which trial counsel made the disputed decision, it was not unreasonable of the California Supreme Court to defer to counsel's choice.  Eight hours after the homicide, petitioner's blood alcohol level was zero and the amount of valium was minimal. While these levels certainly would have been higher eight hours earlier, it would not have been unreasonable for counsel to suspect that they could not have been high enough to support a viable intoxication defense.  The Ambien had been taken a full 24 hours prior, which also suggests a weak defense at best.  Moreover, petitioner's calculated conduct on the night of the homicide could well be interpreted by a jury as inconsistent with intoxication.

At the trial, the prosecutor relied on the following circumstantial evidence to support a finding of premeditation and deliberation: petitioner went to the victim's house at night, which suggests he wanted to be hidden; he left the driver in the car, out of sight and earshot of the victim's house; he chose as a driver an undocumented immigrant who was unlikely to go to the police; the wounds were so many and severe that they could only have been intended to kill; the killer slit the victim's throat from behind; he fled the scene; and he had the presence of mind to destroy evidence by discarding a bloody shirt, getting rid of the knife, and washing out the truck bed.  While these circumstances do not preclude an intoxication defense or prove that petitioner was not impaired, they do make an intoxication or impairment defense sufficiently problematic that the California Supreme Court's deference to trial counsel's strategic decision cannot be deemed objectively unreasonable.

Likewise, Alanis's testimony that petitioner said he killed the victim because she owed him money does not necessarily defeat a mental state defense, but it makes one very difficult. The admission of a specific pecuniary motive for the murder, in the murder's immediate aftermath, directly supports the prosecution's deliberation and premeditation theory.  Other interpretations are possible – as petitioner argues here, the defense theory could have been that there was a fight about a debt, which led to a spontaneous and non-deliberated killing under the influence of medications.  However, the question before the court is not whether a mental state defense could conceivably have worked in this case.  It is whether the state court acted reasonably in deferring to trial counsel's decision not to pursue an intoxication or impairment defense.

17

1   Given the context of the evidence against petitioner, that deference was not objectively

2   unreasonable.

3          Other circumstances relevant to trial counsel's performance further support the state

4   court's application of <u>Strickland</u> deference.  At first blush, counsel's failure to question Dr. Malan

5   about petitioner's use of mind-altering medications, when Dr. Malan was on the stand and

6   discussing petitioner's medical condition, raises a legitimate question about performance.

7   However, the defense investigator's report of her interview with Dr. Malan contains information

8   which could have been used to impeach any testimony from Dr. Malan in support of an

9   intoxication or impairment defense.  Dr. Malan had reported that petitioner used Ambien but "not

10   . . . too much."  Exhibit A at 2.  More problematically, Dr. Malan had attributed petitioner's past

11   problems with confusion primarily to Darvocet, and reported that Darvocet had been discontinued

12   and the confusion cleared.  <u>Id.</u>  Moreover, Dr. Malan's example of the effects of petitioner's

13   confusion would not have been something defense counsel wanted the jury to hear:  "Adan told

14   me he recently got into an altercation with someone who was threatening to kill him.  He stated

15   he was confused because of the medication and he tried to slash the tires to escape but he slashed

16   the wrong set of tires and got arrested."  <u>Id.</u> at 2-3.

17          Trial counsel was aware of other evidence that was also potentially problematic for a

18   mental state defense.  When petitioner was taken to the police station and interviewed, he stated

19   alternately that he was not, might have been, and "probably" was at the victim's home the night

20   of the homicide.  E.g., CT 452, 453, 455, 472.  He claimed not to know what had happened there,

21   not to remember anything that had happened after returning home from the Pick and Pull with

22   hamburgers, not to know how he got to Nora's house that night, and not to remember how he got

23   the scratches on his face.  E.g., CT 452, 453, 457-58, 459-61, 463, 4746.  He stated that he did not

24   hurt Nora "that I know of," CT 460, and "I don't recall hurting nobody," CT 466.  In evading

25   repeated questions about what had happened, petitioner emphasized that he doesn't remember

26   things when he drinks, and that he had been drunk earlier in the day.  CT 461-62, 467.  He also

27   attributed his inability to answer questions to the pills he takes.  CT 469-70.  In explaining his

28   memory problems, petitioner stated:

1
2
3
4

> . . . [S]ometimes I just remember things later on, but not, not like this thing like today or something, just like what time my head gets clear or something and sometimes I don't remember things. Like I was taking this medicine, uh, Darvocet and now I just jump up out of the bed and hit my wife or something and she will go like. . . why you hit me for [?] and I'll be what do you mean, she would wake me up and I was like you know what I mean?

5   CT 471.

6   Throughout the interview, petitioner invoked his alcohol and prescription medication use

7   to explain his complete lack of memory about the evening and knowledge of what had happened.

8   CT 493 ("[I]f I done something and I don't recall it, if I been drunk or with those pills, you know,

9   that's the reason I always protect myself."); 499-501 (describing medications and suggesting that

10  combination of alcohol and medications was to blame for memory loss), 507-08 ("I have a

11  problem. . . not remember things.").  He also suggested that the medications could explain

12  behaviors that he did not recall.  CT 518 ("… this medication I was taking, somebody be able just

13  go off on me and I would just flip like this."), 522 (". . . sometimes if I was sleep. . . and I wake

14  up and do something and it's like you walk in the sleep or something. . .").  These statements

15  were not introduced at trial, but certainly would have been if petitioner had presented a defense

16  based on the effects of the medications.

17  Petitioner relies on these statements in his operative federal petition to support the

18  viability of a mental state defense based on his medications, but the transcript does not read

19  favorably for him.  This court need not made any credibility judgments.  For Strickland purposes

20  it is enough that reasonable counsel would have anticipated a prosecutor's argument that

21  petitioner's claim to complete amnesia was not credible.  Such an argument would have had

22  substantial weight, and a jury could well have reasoned that the entire defense was fabricated or at

23  least that petitioner was exaggerating the extent of his impairment to avoid responsibility.  With

24  these considerations in mind, counsel could have concluded that an intoxication or impairment

25  defense was unlikely to succeed or was potentially counter-productive, and should not be

26  pursued.

27  In light of all these considerations, it was not objectively unreasonable of the California

28  Supreme Court to find trial counsel's performance entitled to deference under Strickland.  In the

1  alternative, it was not unreasonable of the state court to summarily deny the claim on prejudice
2  grounds.
3      Petitioner presented the state court with little more than speculation about the mental state
4  defense that could have been presented had counsel conducted further toxicological testing and
5  retained an expert to testify about the effects of petitioner's medications.  See Grisby v. Blodgett,
6  130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what [a witness] could have said is not
7  enough to establish prejudice."); Hendricks v. Calderon, 70 F.3d 1032, 1042 (1995) ("Absent an
8  account of what beneficial evidence investigation into any of these issues would have turned up,
9  [petitioner] cannot meet the prejudice prong of the Strickland test.").  The evidence that was
10  before the state court regarding petitioner's pain control regimen provides a theoretically possible
11  basis for reasonable doubt regarding intent, but does not raise a reasonable probability of a
12  different result at trial.  See Strickland, 466 U.S. at 693-94.  Especially in light of the evidence
13  supporting a finding of deliberation and premeditation, it cannot be concluded that a different
14  result is likely had counsel elicited the available evidence of petitioner's use of medications that
15  may cause cognitive impairment.
16      For all these reasons, the California Supreme Court's adjudication of the claim was not
17  objectively unreasonable.  28 U.S.C. § 2254(d)(1) therefore bars relief.

CONCLUSION

19      For the reasons explained above, it is HEREBY ORDERED as follows:
20      1.  Petitioner's attachments to Exhibit D are deemed filed *nunc pro tunc* to the filing date
21  of the amended petition (ECF No. 33); and
22      2.  Petitioner's request for funding (ECF No. 43), to the extent that it is properly before
23  the court, is denied.
24      It is HEREBY RECOMMENDED that:
25      1.  Petitioner's motion for stay and abeyance, ECF No. 46, be denied; and
26      2.  The petition for writ of habeas corpus be denied.
27      These findings and recommendations are submitted to the United States District Judge
28  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

1   after being served with these findings and recommendations, any party may file written

2   objections with the court and serve a copy on all parties.  Such a document should be captioned

3   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

4   shall be served and filed within fourteen days after service of the objections.  The parties are

5   advised that failure to file objections within the specified time may waive the right to appeal the

6   District Courts order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7   DATED: September 8, 2014

8   _____

    ALLISON CLAIRE
9   UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28